UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARYANN COTTRELL and RICHARD HOLLAND,<br><br>Plaintiffs,<br><br>v.<br><br>ZAGAMI, LLC,<br><br>Defendant. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 08-3340 (JEI/AMD)<br><br>**OPINION** |

**APPEARANCES:**

LAW OFFICE OF SANDER FRIEDMAN, LLC
By: Wesley G. Hanna, Esq.
125 North Route 73
West Berlin, NJ 08091
Counsel for Plaintiffs

NASH LAW FIRM LLC
By: Alan A. Reuter, Esq.
1001 Melrose Avenue, Suite A
Blackwood, NJ 08012
Counsel for Defendant

**IRENAS**, Senior District Judge:

This case involves Plaintiffs Maryann Cottrell and Richard Holland's claims under the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD") that Defendant Zagami, LLC retaliated against them in response to Plaintiffs' efforts to discourage the unauthorized use of handicap accessible parking.[1] Pending before the Court is

[1] This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

Defendant's Motion for Summary Judgment.

**I.**

Plaintiff Maryann Cottrell is the mother of a severely disabled girl; she shares responsibility for the care of her daughter with Plaintiff Richard Holland.  (Amended Compl. ¶6.) Defendant Zagami operates the Landmark Americana Tap and Grill ("Landmark Americana"), Landmark Liquors, and a nightclub called The Spot, in Glassboro, New Jersey.  (*Id.* ¶2.)

Cottrell has filed a number of citizen's complaints for handicapped parking violations on Defendant's premises, which include: (1) Oct. 31, 2005 against Jeremiah Trotter; (2) Nov. 28, 2005 against Jeremiah Trotter; (3) Nov. 28, 2005 against Donovan McNabb; (4) Jan. 27, 2006 against Landmark and Rolling Rock; (5) June 26, 2006 against Landmark; and (6) June 27, 2006 against Landmark.[2]  (Reuter Cert. Ex. H #7.)

Plaintiff Holland could not remember whether he was present when Cottrell wrote tickets for any of the alleged violations or whether he participated in taking photographs or videos of the violations prior to the date they were banned from Defendant's property.  (*Id.* Ex. G at 259.)

By letter dated June 9, 2006, Cottrell requested a public hearing on the renewal of Defendant's liquor license.  (*Id.* Ex.

---

[2] After July 6, 2006, the date when Plaintiffs were banned from Defendant's property, Plaintiffs documented five more alleged violations.  (*See* Reuter Cert. Ex. H #7.)

M.)  In her letter, Cottrell stated that she had concerns about Defendant's businesses promoting the sale of alcohol to underage individuals, failing to check credentials in connection with the sale of alcohol, and serving alcohol beyond the legal limit of consumption.  (*Id.*)

On June 26 or 27, 2006, Cottrell documented a handicapped parking violation,[3] and then went inside the Landmark Americana to inquire about accommodations.  (*Id.* Ex. I at 79:1-11.)  Cottrell inquired about the location of the occupancy sign, which she believed was not conspicuously displayed, and the location of the bathrooms.  (*Id.* at 79-80.)  Manager David Goldman met with her and pointed out the occupancy sign and provided a tour of the restaurant and nightclub.  (*Id.*)  According Goldman, Cottrell was hostile and loud, and he asked her to leave twice before she complied.  (*Id.* Ex. Q. at 56.)

On June 27, 2006, a Glassboro Council public meeting was held regarding the liquor license renewal for Defendant's businesses during which Cottrell voiced her concerns.  (*Id.* Ex. L.)  Specifically, Cottrell made reference to newspaper articles concerning violence at Defendant's businesses and the service of alcohol to minors.  (*Id.*)  Also, referring to the Landmark Americana, Cottrell stated that it "hasn't been accessible for

---

[3] Although documented on June 26 or June 27, 2006, Cottrell did not sign the citizen's complaints until July 20, 2006.  (*See* Reuter Cert. Ex. S.)

the disabled." (*Id.*)

On July 6, 2006, Defendant issued to Plaintiffs a "ban letter" forbidding them from entering onto the premises because their "prior actions have been disruptive of the regular and essential operations of the Premises." (*Id.* Ex. R.) This ban letter was directed to both Cottrell and Holland. According to Goldman, Holland and Cottrell "were attempting to accomplish the same exact thing and while Richard Holland did not actually write a letter to protest our liquor license or speak out at that liquor license [hearing] . . . our feeling was that we just wanted nothing to do with him . . . ." (Hanna Cert. Ex. B at 87-88.)

Plaintiffs filed a Complaint in this action on July 3, 2008, and an Amended Complaint on June 18, 2009. The instant Motion for Summary Judgment was filed on January 10, 2012.

## II.

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

4

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Pub. Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The role of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"Summary judgment, of course, looks only to admissible evidence." *Arnold Pontiac-GMC, Inc. v. Budd Baer, Inc.*, 826 F.2d 1335, 1339 (3d Cir. 1987); *see also Blackburn v. United Parcel Service*, 179 F.3d 81, 95 (3d Cir. 1999)(noting that hearsay statements that are inadmissible at trial should not be considered when determining whether Plaintiff has established a triable issue of fact).

## III.

Defendant moves for summary judgment arguing that Plaintiffs have failed to establish a *prima facie* case, and that the

5

exclusion of Plaintiffs was lawful and not based on an improper motive.  Defendant also renews two arguments that were previously rejected by this Court on earlier motions, namely that Plaintiffs lack standing and their action is time-barred.

### A.

Federal courts may only consider those actions that meet the case-or-controversy requirements of Article III.  Essential to Article III jurisdiction is the doctrine of standing. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000). To meet the minimal constitutional mandate for Article III standing Plaintiffs must show (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) that the injury will "likely" be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

Defendant argues that Plaintiffs have no "injury in fact" because discovery has revealed that prior to the issuance of the ban letter, Plaintiffs never dined at or made purchases from

6

Defendant's businesses.[4]  Plaintiffs do not dispute that they never patronized Defendant's businesses, but point out that prior to the ban they once browsed Landmark Liquors.  (Reuter Cert. Ex. I. at 92:3-11.) Since the ban, Plaintiffs contend that they have missed out on social and civic opportunities.  (*Id.* Ex. H. #12.) Specifically, Cottrell had to alter social arrangements with a friend, and Holland had to decline a social outing with his motorcycle group.  (*Id.*)  In addition, both Plaintiffs could not attend a social gathering following their attendance at a ceremony for a fallen police dog.  (*Id.*)

The Court finds that Plaintiffs have demonstrated an actual

---

[4] Defendant also argues that because Cottrell and Holland only entered its premises for the sole purpose of monitoring handicapped parking laws it could lawfully exclude them because they were never good faith patrons.  However, as noted by Judge Kugler in *Cottrell v. Good Wheels*, 2011 WL 900038, at *5 (D.N.J. March 15, 2011), affording a business that is open to the public the right to exclude individuals who intended to report discriminatory actions in a non-disruptive manner would be at odds with the retaliation provisions in the ADA and the NJLAD. Moreover, a property owner does not have a  clear-cut right to exclude from its premises people who do not visit for the purpose of conducting business.  "[W]hen property owners open their premises to the general public in the pursuit of their own property interests, they have no right to exclude people unreasonably.  On the contrary, they have a duty not to act in an arbitrary or discriminatory manner toward persons who come on their premises."  *See Uston v. Resorts Int'l Hotel, Inc.*, 89 N.J. 163, 173 (N.J. 1982).  However, this does not mean that businesses are prohibited from excluding a person who is conducting reporting activities in a disruptive manner.  *See Uston,* 89 N.J. at 173(noting that property owners have the right "to exclude from their premises those whose actions disrupt the regular and essential operations of the [premises]")(internal quotations and citation omitted).

injury resulting from their exclusion from Defendant's premises sufficient to satisfy Article III standing. While Plaintiffs may not have patronized Defendant's businesses prior to the ban letter, they have pointed to specific instances where the revocation of their business invitee status at this local establishment has caused them actual harm. Thus, the Court finds that Plaintiffs have identified harm that rises beyond the conjectural or hypothetical level to constitute a concrete injury in fact for the purpose of Article III standing.

**B.**

The statute of limitations for ADA and NJLAD claims is two years. *See Disabled in Action of Pa. v. Southeastern Pa. Transp. Authority*, 539 F.3d 199, 208 (3d Cir. 2008); *Montells v. Haynes*, 133 N.J. 282, 292 (1993). "[A] federal cause of action accrues when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." *Disabled in Action*, 539 F.3d at 209 (internal quotations and citation omitted).

Here, Plaintiffs cause of action did not accrue until after they received the July 6, 2006 ban letter. Since the instant suit was initiated on July 3, 2008, Plaintiffs' claims are timely filed within the two-year limitations period.

C.

The ADA's anti-retaliation provision provides a cause of action to an individual who "opposed any act or practice made unlawful" by the ADA. 42 U.S.C. § 12203(a). The ADA makes unlawful any discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases ... or operates a place of public accommodation." 42 U.S.C. § 12182(a). With regard to handicapped parking, 28 C.F.R. § 36.304(b)(18) instructs public accommodations to "create designated accessible parking spaces" for the disabled. The Appellate Division of the New Jersey Superior Court has held that the NJLAD provides a cause of action for a failure to provide reasonable handicapped parking accommodations. *See Estate of Nicholas v. Ocean Plaza Condominium Ass'n, Inc.*, 388 N.J. Super. 571, 590-91 (App. Div. 2006).

To establish a *prima facie* case of retaliation under the ADA or the NJLAD, a plaintiff must establish that (1) she engaged in protected conduct, (2) an adverse action was taken, and (3) there was a causal connection between the protected conduct and the adverse action. *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 757 (3d Cir. 2004); *Victor v. State*, 203 N.J. 383, 409 (2010).

Once a plaintiff has established a *prima facie* case, the burden shifts to the defendant to present a non-retaliatory reason for the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's articulated reason is a pretext for retaliation.[5] *See id.* at 804.

Defendant moves for summary judgment arguing that Plaintiffs cannot establish a causal connection between their protected activity and their ban from the premises. According to Defendant, Plaintiffs were banned because (1) Cottrell was disruptive to Defendant's ordinary business operations when she entered the Landmark Americana on June 26 or 27, 2006, and (2) both Cottrell and Holland sought to destroy the entirety of Defendant's business by opposing the renewal of its liquor license.

To establish the requisite causal connection, a plaintiff is typically required to prove either "(1) an unusually suggestive

---

[5] Although Plaintiffs do not argue that the mixed-motive theory of discrimination applies to this case, the Court notes that it is not firmly settled whether a mixed-motive theory or but-for analysis applies to an ADA cause of action. However, in light of the Supreme Court's ruling in G*ross v. FBL Fin. Servs.*, 129 S.Ct. 2343 (2009), courts in this Circuit have concluded that the mixed-motive analysis does not apply to ADA claims. *See Warshaw v. Concentra Health Servs.*, 719 F.Supp.2d 484, 502 (E.D.Pa. 2010); *see also Cottrell v. Good Wheels*, 2011 WL 900038, *6 n.5 (D.N.J. March 15, 2011).

temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)(citations omitted). In the absence of that proof, the plaintiff is required to show that from the "'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). The Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. *Id.*

The Court finds that the timing of the ban letter does not support an inference that it was causally connected with Plaintiffs' ADA protected conduct. Cottrell engaged in protected conduct on January 27, 2006, and then not again until after the July 6, 2006 ban letter.[6] While Cottrell entered the Landmark Americana to inquire about "accommodations" on June 26 or June 27, 2006, the record does not reflect that Cottrell engaged in any protected conduct while inside the Landmark Americana on this date. Cottrell asked about the location of the fire occupancy sign, and the bathrooms; she did not oppose or identify any act

---

[6] Although she did document handicapped parking violations on June 26 and June 27, 2006, these citizen's complaints were not signed or issued until July 20, 2006, after the ban letter was sent. (*See* Reuter Cert. Ex. S.) Because Defendant would not have been aware of this protected conduct until after the ban letter was issued, it cannot have a causal connection with the adverse action.

or practice made unlawful by the ADA. (*See* Reuter Cert. Ex. I at 79-80, 238.) The record reflects that the ban letter was dated approximately six months after Cottrell engaged in any ADA protected conduct.

Instead, the timing of the ban letter suggests that it was causally connected to Cottrell's opposition to Defendant's liquor license renewal. The ban letter dated July 6, 2006 was sent just ten days after the June 27, 2006 Glassboro Council public meeting, held at Cottrell's request, wherein Cottrell opposed the renewal of Defendant's liquor license. This attempt to defeat Defendant's liquor license renewal is not protected conduct under the ADA, whose object is not to shut businesses down but to keep them open and accessible for all people.

In light of all the evidence, Plaintiffs have failed to present evidence establishing the causal connection prong of their retaliation claims.[7] Accordingly, Plaintiffs' retaliation claims under the ADA and the NJLAD fail.

---

[7] Holland's claims also fail because he did not engage in protected conduct. Holland could not identify any specific incident where he documented an alleged handicapped parking violation on Defendant's property or assisted Cottrell in doing so prior to the date he was banned from Defendant's property. (*See* Reuter Cert. Ex. G at 259.) After the date when he was banned from Defendant's property, Holland documented a violation by video on the premises. (*Id.* at 259:19-24.) However, while this would be protected conduct, because it occurred after the date of the adverse action, it would not have a causal connection with it.

**IV.**

For the reasons stated above, Defendant's Motion for Summary Judgment will be granted. An appropriate Order accompanies this Opinion.

Dated: February  14 , 2012

                                         s/Joseph E. Irenas  
                                         **JOSEPH E. IRENAS, S.U.S.D.J.**